# Case No. 35.

## The ACTIVE.

### [1 Paine, 247.][1]

Circuit Court, D. Connecticut. April, 1809.[2]

REGISTRY OF VESSELS—LICENSE—FORFEITURE—EMBARGO.

1. A vessel licensed for the cod-fishery under the 32d section of the act for enrolling and licensing vessels, during the embargo laws took on board a quantity of goods without inspection at a wharf in New London, to transport about five miles to Mistic river, in the same district, but was seized when a mile and a half on her way. Holden, that although she had not violated any of the provisions of the embargo laws, she was forfeited for being employed in another trade than that for which she was licensed.

[See note at end of case.]

2. It seems, that no penalty was intended to be inflicted by the 2d section of the additional embargo law of the 25th of April, 1808, [2 Stat. 499,] for loading a vessel without inspection, but that the penalty for leaving the district without a clearance, which could be obtained only on inspection, was thought by the legislature to be alone a sufficient sanction to secure an inspection.

3. It seems, that the penalties there mentioned were intended to apply to the inspecting officers.

[In admiralty. On appeal from district court. Libel to enforce a forfeiture for violation of the act of January 9, 1808, entitled "An act supplementary to the act entitled 'An act laying an embargo on all ships and vessels in the ports and harbors of the United States,'" (2 Stat. 453;) and also for violating section 32 of the act of February 18, 1793, for enrolling and licensing vessels, (1 Stat. 316.) The district court condemned both vessel and cargo. Affirmed. This decree was affirmed by the supreme court, in 7 Cranch, (11 U. S.) 100.]

D. Daggett, for appellants.

H. Huntington, Dist. Atty., for respondents.

Before LIVINGSTON, Circuit Justice, and EDWARDS, District Judge.

LIVINGSTON, District Judge. About the facts which produced this prosecution, there is little or no controversy. It appears that the sloop Active, being regularly licensed to carry on the cod-fishery, and owned by Henry Billinger and William A. Morgan, who now appear as claimants of the vessel, on the 5th of July last, while lying at a wharf in the port of New-London, took on board the articles mentioned in the libel, for the purpose of transporting them to Mistic river in Groton, in the same district, about five miles from said wharf. That Gates, who claims the principal part of the cargo, never was an owner, master, or mariner of said sloop. That the cargo was put on board without the knowledge, and not under the inspection of any of the revenue

[1][Reported by Elijah Paine, Jr., Esq.]
[2][Affirmed by supreme court in 7 Cranch, (11 U. S.) 100.]

officers of the district of New-London. And that the vessel, being then on her way to Mistic river, was seized about one mile and a half below the town, by a boat belonging to a revenue cutter.

The first objection taken to this proceeding of the sloop Active, and urged as a cause of condemnation, is the manner in which the cargo was put on board, which it is insisted ought to have been done under the inspection of a revenue officer. This, it is thought, is rendered necessary by the 2d section of the supplementary embargo law, passed 25th April. 1808, [2 Stat. 490.] taken in connexion with the 27th and 50th sections of the collection law. By the first, no vessel of this description could, during the continuance of certain acts, receive a clearance, (which had been considered necessary by the preceding section,) unless the lading were made under the inspection of the proper revenue officers. subject to the same regulations and penalties as are provided by law for the inspection of goods imported into the United States.

If the legislature by this clause, intended to subject a vessel and cargo to forfeiture for the omission of a regular inspection previous to her lading, it must be allowed that they have not been very happy in the choice of their expressions. If there be any ambiguity in a penal act, and consequently considerable doubt whether a forfeiture has accrued, it will always be a very good reason to acquit the property. It cannot be the duty of a court, by nice discriminations and constructions, to bring within the operation of a penal statute any case which is not very obviously within the plain provisions of it. The court, so far from being of this opinion, is inclined to think that the only purpose for which an inspection was to be undergone, was to entitle the vessel to a clearance, without which. she could not depart from any district of the United States, without subjecting herself to forfeiture, which was a sufficient security for the observance of that ceremony.

On looking into the sections of the collection law which have been referred to, the court does not perceive one word said of inspection, or any penalty imposed for not submitting to one. The one inflicts a penalty for landing goods without proper authority; and the other for landing them at night, or without a permit. All the clauses of the act which relate to inspection, are directory to the public officers; and should a collector neglect to put an inspector on board, or grant a permit to land without that formality, whatever penalties he might incur himself, neither goods or vessel would be forfeited. As no forfeiture, therefore, arises from the mere circumstance of goods which are imported not having been inspected previous to their landing, how can this court undertake to say, without some more explicit declaration, that the bare putting them on board

without such ceremony, shall work a confiscation of them? Besides, she was still within the district. and might have applied for a clearance, when it would have been the collector's duty to have the lading inspected. But if he had granted a clearance without that form, it can hardly be supposed that his negligence or omission would have occasioned a forfeiture. The only way in which this section of the embargo law can be understood, and which is also its grammatical construction, is that the officers of the revenue, in performing the inspection. are to be subject to the penalties, &c. there referred to.

It would be highly gratifying to the court, to obviate with as much facility and as much satisfaction to itself, the other ground which is stated in the libel as a cause of condemnation, which is that this vessel has been employed in a trade other than that for which she was licensed. The 32d section of the act for enrolling and licensing vessels is very express on this point. [1 Stat. 316.] If any licensed ship or vessel shall be employed in any other trade than that for which she is licensed, she and the cargo found on board of her are forfeited. If the act which has been under consideration were liable to the charge of ambiguity, there appears no room for any uncertainty here. But to avoid the force of terms so plain. and which seem to admit of but one meaning, it is insisted, that here was no employment of the Active in any trade; and that if there was, it was not such trade as the legislature contemplated.

As to the fact of employment, it appears that the Active was stopped in her passage from New-London to Mistic river; and she was taken in the very act of transporting goods from the one place to the other, or in other words of trading between those two places. And whether a freight was to be had or not, made no difference, because it is the employment of her that way that constituted the illegality of the transaction. If then this was the kind of trade that was prohibited to her, one single act in violation of the prohibition, and whether she had reached her destined port or not, is sufficient to produce a forfeiture. Being actually employed or engaged in a trade for which she was not licensed. while she was going to Mistic river, there could be no necessity to wait until the voyage was ended.

But this cannot be the trade intended to be interdicted. It is only foreign trade, or such whereby the revenues of the United States may be defrauded. This is said with some plausibility, and it was supposed on the argument that such were the terms of the license, and of the condition of the bond given to obtain it. But on looking at the license and the law, it will be found that the first, besides declaring that the Active shall not be employed in any trade whereby the public revenue shall be defrauded. con-

tains also a declaration that the owner had sworn that she should not be employed in any other way than is therein specified. The condition of the bond likewise contains a security against both these violations. It is true that the 33d section has a provision in favour of a bona fide importer of goods on which the duties have been secured, but this is only an exemption in the particular case from the operation of the preceding section which takes in the whole cargo, and is no proof that no other than foreign trade was intended. It seems to be the policy of the legislature to confine every vessel within its proper sphere; but whatever may have been the intention here, the language is too plain to indulge any latitude of construction; and when that be the case, a court should resist, which it is always easy to do, those inclinations to liberality of construction which often border on legislation, and which are too apt to arise from the supposed hardship of the case. This may be one of that description, but from the impression made, I feel it my duty, after mature consideration, and for the reasons stated, to affirm the sentence of the district court.

[NOTE. This cause was carried to the supreme court,—7 Cranch, (11 U. S.) 100,—which held that there was no forfeiture under the embargo acts because the vessel was seized in port, and a departure from port without a clearance was necessary to consummate the offense; that the vessel and a portion of her cargo were forfeited under section 32 of the registry law, 1 Stat. 316, but that the remaining portion of the cargo, which was shown to belong to one Gates, was excepted from the forfeiture. as coming under the provision of section 33. which declares "that in all cases where the whole or any part of the lading or cargo on board any ship or vessel shall belong bona fide to any person or persons other than the master, owner, or mariners of such ship or vessel, and upon which the duties shall have been previously paid or secured, according to law, shall be exempted from any forfeiture under this act, anything therein contained to the contrary notwithstanding."]